IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No.  08-cv-02650-PAB-BNB

JASON FOWLER,

      Plaintiff,

v.

UNITED STATES OF AMERICA and
SEAN GARRICK,

      Defendants.

---

## ORDER

---

      This matter is before the Court on the motion to dismiss for lack of subject matter jurisdiction ("U.S. Mot.") [Docket No. 32] of defendant United States of America ("United States") and defendant Sean Garrick's motion to certify scope of employment and to dismiss him from this action as a defendant ("Garrick Mot.") [Docket No. 30].  The motions are fully briefed and ripe for disposition.  As they both turn on the same question – i.e., whether Garrick was acting within the scope of his employment at the time he was in a car accident with plaintiff – the Court takes up the motions together.

## I. BACKGROUND

      Unless otherwise indicated, the following facts are not in dispute.  On the afternoon of June 4, 2006, Garrick was involved in a car accident with plaintiff Jason Fowler in Boulder County, Colorado.  Garrick was an Air Force employee stationed at Buckley Air Force Base in Aurora, Colorado.  The day of the accident, however, was

Garrick's first day of a temporary four-day assignment at a Boulder facility.  The night before the first day of his temporary duty, Garrick stayed in Aurora.  He commuted the hour and fifteen minutes to Boulder County on the first morning.

About midday June 4, 2006, Garrick's supervisor gave him a break until 2:30 p.m.  Garrick decided to drive to an Air Force-provided hotel room, where he had yet to check in, to take a nap.[1]  The accident occurred while Garrick was en route to the hotel. Garrick returned to work by 2:30 p.m. and completed his shift, as well as his four-day temporary assignment.

The Air Force provided hotel lodging to Garrick and others on temporary assignment at the Boulder facility.  Other than one Boulder County resident, apparently all those on temporary assignment took advantage of the hotel accommodations. Furthermore, Garrick was entitled to reimbursement for his travel costs, though not for the trip back to the hotel during a midday break.  The parties dispute whether Garrick intended to benefit the Air Force by taking the break, which will be discussed in greater detail when analyzing the sole question presented here, i.e., whether Garrick's returning to the hotel to rest during a midday break was within the scope of his employment.

## II.  STANDARD OF REVIEW

### 1.  Garrick's Motion for Certification Pursuant to the Westfall Act

The Westfall Act bars private actions against a federal employee for a "negligent or wrongful act or omission . . . while acting within the scope of [the employee's] office

---

[1]The parties spend much energy disputing whether Garrick also intended to turn on the television during his break.  The fact is immaterial, as it is undisputed that Garrick's intention was to rest during his break.

or employment. . . ." 28 U.S.C. § 2679(b)(1).  The parties here do not dispute that

Garrick was a federal employee at the time of the accident.  Rather, they dispute

whether he was acting within the scope of his employment.  Garrick sought, and was

denied, certification by the Attorney General that he was acting within the scope of his

employment.  Therefore, through his motion to certify [Docket No. 30], Garrick now

requests that the Court certify the scope of his employment pursuant to section

2679(d)(3) of the Westfall Act, which provides:

> In the event that the Attorney General has refused to certify scope of office
> or employment under this section, the employee may at any time before trial
> petition the court to find and certify that the employee was acting within the
> scope of his office or employment.  Upon such certification by the court, such
> action or proceeding shall be deemed to be an action or proceeding brought
> against the United States under the provisions of this title and all references
> thereto, and the United States shall be substituted as the party defendant.

The Tenth Circuit has adopted the view that "certification, although subject to de novo

review, is prima facie evidence that an employee's challenged conduct was within the

scope of his employment.  The plaintiff then bears the burden of rebutting the scope-of-

employment certification with specific facts."  *Richman v. Straley*, 48 F.3d 1139, 1145

(10th Cir. 1995); *see Allender v. Scott*, 379 F. Supp. 2d 1206, 1211 (D.N.M. 2005)

(stating that a denial of certification "is subject to de novo review" and that a "party

seeking review of the Attorney General's denial of certification bears the burden of

presenting evidence and disproving the Attorney General's decision by a

preponderance of the evidence.").  Therefore, Garrick bears the burden to present

"whatever evidence is necessary to persuade [the Court] that [the] . . . alleged act, not

found by the U.S. Attorney to be within the scope of employment, falls within the scope

of employment." *Lyons v. Brown*, 158 F.3d 605, 610-11 (1st Cir. 1998).

## 2.  The United States' Motion

The United States, in its motion to dismiss [Docket No. 32], contends that Garrick was not acting within the scope of his employment and, therefore, that the United States should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  As the United States points out, "[w]hen reviewing a factual attack on subject matter jurisdiction, . . . . [a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Nevertheless, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."  *Id.*  As the Third Circuit noted in *CNA v. United States*, 535 F.3d 132, 140 (3rd Cir. 2008), a great deal turns on this question because Rule 12(b)(6) or Rule 56 would provide more procedural safeguards to the plaintiff than does Rule 12(b)(1).  For example, a district court acting under Rule 12(b)(1) may independently evaluate the evidence regarding disputes over jurisdictional facts, rather than assuming that the plaintiff's allegations are true.  *Id.*  "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case."  *Holt*, 46 F.3d at 1003.

Plaintiff alleges that this case is based on the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b); Compl. [Docket No. 1] at 1.  Thus, the question arises under *Holt* as to whether subject matter jurisdiction is dependent on the FTCA.  The United States argues that, in this case, the jurisdictional question is not intertwined with the merits

4

because the substantive claim arises out of common law negligence and not the FTCA.

The Court disagrees. Unlike *Holt*, where the jurisdictional issue turned on the Flood

Control Act of 1928, 33 U.S.C. § 702c, and the substantive claim arose out of the FTCA,

here, both the substantive claim and the jurisdictional issue require application of the

FTCA. *See Olsen v. United States*, 144 Fed. Appx. 727, 731, 2005 WL 1840173 (10th

Cir. Aug. 4, 2005) (unpublished) (concluding that United States' motion should have

been treated as a motion for summary judgment because "the jurisdictional question is

dependent on the same statutes which provide [plaintiff's] substantive claims," including

the FTCA); *Baur v. Smith*, 572 F. Supp. 2d 1258, 1267 (D.N.M. 2007) (finding that the

question of jurisdiction was intertwined with the merits because both questions relied

upon the FTCA). Therefore, and because all the parties have relied upon evidence

outside the pleadings and none has indicated any objection to the Court converting the

motion to one for summary judgment, the Court shall convert the United States' motion

into one for summary judgment.

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c)

when "the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of

Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). A disputed fact is "material" if under the

relevant substantive law it is essential to proper disposition of the claim. *Wright v.

Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over

material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

Here, if Garrick has met his burden of presenting evidence sufficient to persuade the Court that he was acting within the scope of his employment, then the United States necessarily will have failed to establish that it is entitled to judgment as a matter of law. Conversely, if summary judgment for the United States is warranted here, Garrick will have failed to meet his burden of proof.  The Court, therefore, will take up the parties' motions together.

## III. DISCUSSION

Through the FTCA, the United States has waived sovereign immunity for "claims for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  The parties agree that the question here is whether, under Colorado law, Garrick was acting within the scope of his employment at the time of the accident.

In Colorado, an employer is vicariously liable for the negligence of an employee if he was acting within the scope of his employment.  *See Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1019 (Colo. 2006) ("Well-established in Colorado

6

law, the doctrine of respondeat superior is based on the theory that the employee acts on behalf of the employer when the employee is within the scope of his or her employment.  In such circumstances, the employer is vicariously liable for the employee's negligent acts.") (citing *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 473 (Colo. 1995)).  Liability is determined by reference to "the purpose of the employee's act, rather than the method of performance."  *Pham v. OSP Consultants, Inc.*, 992 P.2d 657, 658-59 (Colo. App. 1999) ("Thus, if the negligent act or omission was in the service of the employer's business, the employer is liable, even though the employer did not authorize the manner of performance."); *see Rowe v. Parks*, No. 06-cv-01192-MSK-MJW, 2007 WL 683989, at *1 (D. Colo. March 1, 2007) ("The employer is liable if the employee's conduct was motivated by an intent to serve the employer's interests and connected to acts the employee was authorized to perform.") (applying Colorado law).

Colorado courts have long held that "[a]cts done which are necessarily incidental to the service for which he is employed are deemed to be 'in the line of his duty, and in the furtherance of the master's business.'" *Hynes v. Donaldson*, 395 P.2d 221, 223 (Colo. 1964) (citations omitted); *Pham*, 992 P.2d at 658.  As the *Hynes* court put it, "where the servant is required to be away from home," "the ministrations of self become part of such incidental activity."  *Hynes*, 395 P.2d at 223.  In other words, an employee acts within the scope of his employment while eating and sleeping "if an employee is required to eat and sleep away from home in order to carry on the employer's

business," as well as "while traveling to and from such necessary lodging and meals." *Pham*, 992 P.2d at 658.

Garrick and the plaintiff, whose positions align in these motions, argue that Garrick was acting within the scope of his employment because he was staying in an Air Force-supplied hotel while on temporary assignment and because he was taking a nap so as to better complete his duties, thus benefitting the Air Force. They therefore argue that Colorado's "traveling employee" rule applies.

Garrick contends that "for all practical purposes, [he was] required to stay at the hotel while working at the Boulder facility." Garrick Reply [Docket No. 34] at 2. The government responds that Garrick was not "required to eat and sleep away from home," *Pham*, 992 P.2d at 658, and that it was not "impossible for him to return home each night," *Hynes*, 395 P.2d at 223.

"[N]ot every action an employee takes while on an assignment out of town necessarily falls within the scope of employment." *Pham*, 992 P.2d at 659. The Court must still determine "whether the employee is engaged in an activity that bears some relationship to the employer's business." *Id.* Here, the Court concludes that, even assuming that the traveling employee rule applies in this case, "neither the purpose of [Garrick's] trip nor the activities during the trip were in the service of [the Air Force], and none of the activities was necessarily incidental to the employment." *Id.* at 659.

Garrick was free to do whatever he liked during his break, so long as he returned by 2:30 p.m. Garrick's supervising officer testified that, during a break, "they're not ordered to leave. They can stay around in the building and do whatever they want. . . .

8

If they have any work-related issues that are not associated with crew, they can work on that.  But they are given a break to go do whatever they want to do." Ex. B to U.S. Response [Docket No. 33] at 6; *see id.* at 21 ("Usually, when I give them a break, they just have to let me know where they're going to be so I can [contact them], but they can choose to do whatever they want.").  That Garrick chose to drive to the hotel to take a nap was done for his own benefit and was not incidental to his duties while on assignment.  *Cf.* Ex. G ("Lucas Decl.") to U.S. Mot. at 2, ¶ 5 ("[I]n releasing [Senior Airman] Garrick, I was allowing him personal time to engage in non-Air Force activities."); Ex. A ("Garrick Dep.") to Garrick Mot. at 4 (testifying that he was not directed to return to the hotel and did not believe returning to the hotel during his break was part of his duties).  The fact that Garrick would have been required to return to the hotel at some point after his shift in order to get his required rest before the next morning does not change the analysis here.[2]  In this case, Garrick's return to the hotel during a break was a "pleasurable 'frolic of his own'" falling outside the scope of his employment and those actions incidental to his employment.  *Courtright v. Pittman*, 264 F. Supp. 114, 120 (D. Colo. 1967).  This conclusion is supported by the fact that the Air Force did not provide reimbursement for travel to and from the hotel during the work day, a fact Garrick does not dispute.  *See* U.S. Response [Docket No. 33] at 2, § 6; Garrick Reply [Docket No. 34] at 5.

---

[2]The Court need not resolve whether the traveling employee rule would apply under different circumstances.  Under the circumstances of this case, the Court simply finds that the rule is not relevant to the conduct at issue where Garrick was not "traveling to and from . . . necessary lodging and meals" or otherwise engaged in "activities . . . necessarily incidental to the employment." *Pham*, 992 P.2d at 659.

9

Garrick contends that returning to the hotel was "expected and encouraged" by the Air Force.  Garrick Mot. at 6.  The record does not support that contention.  While access to the hotel for sleeping between shifts was provided for the convenience of the Air Force, *see* Ex. B to Garrick Mot. at 12, there is no evidence that the Air Force expected or encouraged Garrick to return to his hotel to take a nap on those rare occasions when he was provided a break.  Rather, he was allowed to do whatever he chose so long as he returned by 2:30 p.m.  Plaintiff argues that "[h]ad Mr. Garrick driven into Mr. Fowler's motorcycle while on his way to buy shoes, then there might be something to the government's argument."  Pl.'s Response at 14, ¶ 6.  The Court sees no basis to distinguish the choice to go shopping for new shoes or to take a nap or to engage in any other activity for his own personal benefit.  Indeed, to the extent he was provided free time to engage in such activities, anything he accomplished for his benefit might provide some measure of attenuated benefit to the Air Force.  To conclude that all such acts would inevitably fall within the scope of his employment would stretch the bounds of vicarious liability well beyond its limit.  Simply put, Garrick's act was not "necessarily incidental to the service for which he [was] employed. . . ." *Hynes v. Donaldson*, 395 P.2d 221, 223 (Colo. 1964) (citations omitted).[3]  In short, the Air Force

---

[3]Relying on *Courtright v. Pittman*, 264 F. Supp. 114, 119 (D. Colo. 1967), Garrick argues that, at a minimum, his returning to the hotel served the "dual purpose" of benefitting himself and the Air Force and, therefore, falls within the scope of his employment.  While there may have been a benefit to the Air Force of providing those on temporary duty a break whenever practical, there is nothing in the record to support the conclusion that Garrick was "actuated . . . by the desire to serve his master," *id.*, when he drove back to the hotel to take a nap. *See* Restatement (Second) of Agency § 228(2) ("Conduct of a servant is not within the scope of employment if it is . . . too little actuated by a purpose to serve the master.").

10

did not specifically encourage or direct Garrick's conduct during his break and his choice of activities was not "committed in the furtherance of the employer's business." *Stokes v. Denver Newspaper Agency, LLP*, 159 P.3d 691, 695 (Colo. App. 2006).[4]

In sum, while "the question of whether an employee is acting within the scope of the employment is a question of fact," *Raleigh*, 130 P.3d at 1019, here, there are no genuine issues of material fact, and the United States is entitled to judgment as a matter of law that Garrick was acting outside the scope of his employment when he drove back to the hotel during a break.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant United States' motion [Docket No. 32] is GRANTED. It is further

**ORDERED** that the United States is dismissed as a defendant.  It is further

**ORDERED** that defendant Sean Garrick's motion [Docket No. 30] is DENIED. Therefore, Sean Garrick is now the only defendant remaining in this action.

---

[4]Plaintiff and Garrick argue that he could have been called back to the facility at any point during his break.  While it is undisputed that, if required, the Air Force could have controlled his movements during the break, the Air Force was not doing so at the time of the accident.

DATED December 28, 2009.

BY THE COURT:


s/ Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge